IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RICHARD TOBIAS and SHARON B. TOBIAS, | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | )<br>) |
| NATIONSTAR MORTGAGE, LLC; U.S. BANK AS TRUSTEE FOR SPECIALTY UNDERWRITING AND RESIDENTIAL FINANCE TRUST SERIES 2006-BC5; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOES 1-10, inclusive, | )<br>)     1:17CV486<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Partial Motion to Dismiss Complaint [Doc. #9] by Defendants Nationstar Mortgage LLC ("Nationstar"), U.S. Bank, as Trustee for Specialty Underwriting and Residential Finance Trust Series 2006-BC5 ("U.S. Bank"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants"). For the reasons explained below, Defendants' Motion is granted and claims three and four are dismissed.

I.

Plaintiffs Richard and Sharon Tobias obtained a mortgage loan for their residence at 493 Liberty Hill Church Road in Mount Gilead, North Carolina ("Subject Property") on or about September 7, 2006, from Wilmington Finance, Inc. memorialized by a Deed of Trust. (Compl. ¶¶ 1, 12 [Doc. #5]; Ex. A to Compl.

[Doc. #5-1].) The Deed of Trust was recorded in Montgomery County Recorder's Office. (Compl. ¶ 12.) In September 2012, the Tobiases entered into a loan modification agreement with Bank of America. (Id. ¶ 14; Ex. D[1] to Compl. [Doc. #5-4].) The following year, on September 3, 2013, an Assignment of the Deed of Trust ("Assignment") was recorded in the Montgomery County Recorder's Office which "purports to convey the beneficial interest in the Deed of Trust from Wilmington Finance, Inc. to Nationstar Mortgage, LLC." (Id. ¶ 15; Ex. C[2] to Compl. [Doc. #5-3].) According to the Tobiases, "the Assignment is fraudulent and/or forged as a 'Robo-Signed' document that is a fraudulent/forged documents it is void ab initio [sic]." (Compl ¶ 15.) The Tobiases also allege that the Assignment is void ab initio "because it was transferred after its closing date of November 28, 2006" which they describe as being a part of a "securitized trust prospectus". (Id. ¶ 33.)

The Complaint then describes a series of communications between Non Profit Alliance of Consumer Advocates ("Non Profit Alliance") and Nationstar between December 3, 2015, and April 15, 2016, during which time Non Profit Alliance assisted the Tobiases with a loan modification application to Nationstar. (Id. ¶¶ 16-20.) Ultimately, Nationstar "closed out" the loan modification application "due to the expired time to submit documents" and Non Profit

---

[1] The Complaint cites Exhibit C as the Loan Modification Agreement, (see Compl. ¶ 14), but Exhibit C is the Assignment of Deed of Trust.
[2] The Complaint cites Exhibit D as the Assignment of the Deed of Trust, (see Compl. ¶ 15), but Exhibit D is a Loan Modification Agreement.

Alliance's failure to submit "the lease agreements and rental receipts." (Id. ¶¶ 19, 20.)

II.

The Tobiases have sued Nationstar and U.S. Bank alleging violations of 12 C.F.R. § 1024 (Claim 1) and 12 C.F.R. § 1024.41 (Claim 2) related to their loan modification application and have sued all Defendants seeking cancellation of written instruments (Claim 3) and alleging unfair and deceptive trade practices (Claim 4) related to the Assignment. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants have moved to dismiss Claims 3 and 4 for lack of standing and, in the alternative for Claim 4, because the North Carolina Debt Collections Act serves as the exclusive remedy for debt collection actions alleging unfair and deceptive practices.

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual

3

allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in its favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557.

A.

In their third claim seeking cancellation of written instruments, the Tobiases challenge the Assignment and presumably a pooling and servicing agreement ("PSA") they refer to as a "securitized trust prospectus". (Compl. ¶¶ 15, 33 ("the Assignment . . . is void ab initio because it was transferred after its closing date . . . [and] PLAINTIFFS do not yet have possession of a copy of this securitized trust prospectus").) They have "a reasonable apprehension that if these void ab initio written instruments are left outstanding, they may cause serious injury due to those documents being void or voidable" and "seek to cancel the . . . written instruments . . . due to their being fraudulently forged, notarized, and criminally recorded". (Id. ¶¶ 35, 36.) In response, Defendants argue that the Assignment is between Bank of America, N.A.[3] and Nationstar, not the Tobiases. (Mem. of Law

---

[3] While the Complaint alleges that the Assignment was by Wilmington Finance, Inc., (see Compl. ¶ 15), the Assignment attached as Exhibit C to the Complaint

4

in Supp. of Defs.' Partial Mot. to Dismiss Compl. at 4-5 [Doc. #11].) The Tobiases neither allege to have been parties to the Assignment nor that the Assignment altered their rights or obligations under the Deed of Trust; therefore, according to Defendants, they lack standing to challenge the Assignment's validity. (Id.) Furthermore, the Tobiases have not alleged that they were a party to any PSA and, therefore, according to Defendants, similarly lack standing "to assert a violation of the securitized trust's pooling and servicing agreement." (Id. at 5 (referring to the allegation of a "securitized trust" in paragraph 33 of the Complaint).)

The Court agrees with Defendants that the Tobiases lack standing to challenge the Assignment and the PSA. "[S]tanding in federal court is a question of federal law". Hollingsworth v. Perry, ___ U.S. ___, 133 S. Ct. 2652, 2667 (2013). The United States Supreme Court has taught that "the irreducible constitutional minimum of standing contains three elements" – (1) an injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) the likelihood that a favorable decision will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). "[W]here state-created interests are at issue, . . . federal courts look to state law to aid in the definition of the 'injury' a plaintiff may assert to meet Article III requirements." Higdon v. Lincoln Nat'l Ins. Co., No. ELH-13-2152, 2014 WL 6951290, at *7 (D. Md. Dec. 8, 2014) (applying

---

shows Wilmington Finance, Inc. as the "Original Lender", but the "Assignor" to be Bank of America, N.A., from whom the Tobiases received a loan modification in September 2012.

Maryland law in analysis of standing because "Maryland law creates and defines the . . . asserted contract right"); see also Wolf v. Fed. Nat'l Mortg. Ass'n, 512 F. App'x 336, 342 (4th Cir. 2013) (unpublished) (applying Virginia law to determine standing to challenge an assignment of a promissory note); Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 118 (4th Cir. 2004) ("A litigant bringing a diversity action (or seeking removal on that basis) can have no greater ability to assert legal rights created under state law than it would have in the state forum.").

Under North Carolina law, only a party to a contract or an intended third-party beneficiary of the contract may bring a claim under the contract. Tasz, Inc. v. Indus. Thermo Polymers, Ltd., 80 F. Supp. 3d 671, 681 (W.D.N.C. 2015) (citing Vogel v. Reed Supply Co., 177 S.E.2d 273, 279 (N.C. 1970)); Holshouser v. Shaner Hotel Grp. Props. One Ltd. P'ship, 518 S.E.2d 17, 24-25 (N.C. Ct. App. 1999). The Tobiases have not alleged that they were parties to or intended third-party beneficiaries of the Assignment or PSA, nor does the language of the Assignment suggest they were.

"Hence the only circumstances under which [the Tobiases] would have standing to challenge [the] [A]ssignment[] would be upon a showing of prejudice, i.e. that [they] face[] the potential for double liability if the [A]ssignment stands." In re Sprouse, Bankr. No. 09-31054, 2014 WL 948490, at *2 (Bankr. W.D.N.C. Mar. 11, 2014). There are no allegations that the Assignment or the PSA subjected the Tobiases to double liability or similar prejudice. The allegations that

6

Nationstar closed out their loan modification application do not plausibly allege prejudice relating to the Assignment or the PSA. (See Compl. ¶¶ 16-20.) Furthermore, the allegations (in support of their fourth claim for unfair and deceptive trade practices) that the marketability of the Subject Property has been harmed by a cloud on title are conclusory and unsupported by any other allegations in the Complaint. (See id. ¶ 41.)

Courts facing similar challenges by debtors, although often after a foreclosure, have consistently found the debtors lack standing. See, e.g., Davis v. BSI Fin. Servs., Inc., 633 F. App'x 837, 838 (4th Cir. Feb. 29, 2016) (unpublished) (affirming plaintiff's lack of standing to challenge the purportedly "robo-signed" note because, "[r]egardless of the truth of this assertion, Davis was not a party to the assignment and fails to demonstrate either that he has standing to challenge the assignment or that robo-signing renders the assignment void"); Wolf, 512 F. App'x at 342 (affirming plaintiff's lack of standing to challenge the validity of the assignment because she did "not allege that she is a party to the assignment . . . or that she is an intended beneficiary of the assignment" and explaining further that "the assignment does not affect Wolf's rights or duties at all [because she] still has the obligation under the note to make payments[;] [i]n fact, the only thing the assignment affects is to whom Wolf makes the payments"); Grenadier v. BWW Law Grp., No. 1:14CV827, 2015 WL 417839, at *4-5 (E.D. Va. Jan. 30, 2105) (finding that the plaintiff lacked standing to challenge the validity of the assignments and the securitization process because she did not

allege any facts showing that she was a party or intended third-party beneficiary of any of the assignments); In re Sprouse, 2014 WL 948490, at *2 (describing "ample authority" in support of the finding that the plaintiff, a stranger to the assignments who failed to allege or show exposure to double liability, lacked standing to challenge the assignments as void); McGee v. Countrywide Bank FSB, No. 1:12CV772, 2013 WL 942394, at *3 (M.D.N.C. Mar. 11, 2013), adopted, (Apr. 25, 2013) ("[A] judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a [PSA], when the borrower is neither a party to nor a third party beneficiary of the [PSA]) (quoting In re Walker, 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012)); Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc., 858 F. Supp. 2d 561, 568 (E.D.N.C. 2012) (finding that the plaintiffs lacked standing to challenge the validity of any assignment because they alleged neither a concrete and particularized injury fairly traceable to the challenged assignment nor that they were parties to or intended beneficiaries of the assignments). Here, the Tobiases neither allege that they were parties to or intended beneficiaries of the Assignment or the PSA nor allege prejudice such as double liability arising from the instruments. Therefore, they lack standing to bring their third claim seeking cancellation of written instruments.

B.

Defendants next move to dismiss the Tobiases' fourth claim alleging violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). The Tobiases have alleged that "Defendants' use of a void assignment of the Deed of Trust in the mortgage loan process is an unfair or deceptive act or practice" and "placed an unfair and deceptive cloud on title to the Subject Property that harms its marketability and PLAINTIFFS' ability to sell it". (Compl. ¶¶ 39, 41.) In response, Defendants argue that, because the Tobiases lack standing to challenge the Assignment, they cannot maintain a claim for unfair and deceptive trade practices based on the Assignment. (Mem. of Law in Supp. of Defs.' Partial Mot. to Dismiss Compl. at 6.) They also argue that the claim fails because the North Carolina Debt Collections Act is the exclusive remedy for allegedly unfair debt collection practices. (Id.) The Court agrees that the Complaint fails to state a claim for unfair and deceptive trade practices, but for reasons other than those advanced by Defendants.

Although the Tobiases base their UDTPA claim on "a void assignment" and "a void instrument" as Defendants note, they also allege that the purported void instrument creates a cloud on the title of the Subject Property, a claim for which they do have standing to bring. Cf. Smallwood v. Irwin Mortg. Co., No. 5:12-CV-47-BO, 2013 WL 4735877, at *5 (E.D.N.C. Sept, 3, 2013) (involving a plaintiff's quiet title action and recognizing that a plaintiff who acknowledges a deed of trust can succeed on a quiet title action only if she establishes that the deed is void).

9

However, although the Tobiases have standing, they have not sufficiently alleged facts that plausibly state a claim.

Defendants correctly note that Article 2 of Chapter 75 of the North Carolina General Statutes, entitled "Prohibited Acts by Debt Collectors", is the exclusive remedy under North Carolina law for unfair debt collection practices. See N.C. Gen. Stat. § 75-56(a) ("The specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article.") However, as the Tobiases explain, they are not challenging Defendants' practice of collecting debt. As a result, they are not limited to recovery under Article 2 of Chapter 75 and may allege a claim under the UDTPA.

The elements of a claim for a violation of North Carolina's UDTPA are (1) an unfair or deceptive trade practice (2) in or affecting commerce (3) which proximately caused actual injury to the plaintiff. Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). Most clearly the Tobiases have not sufficiently alleged actual injury proximately caused by Defendants' conduct. They have not challenged – and in fact affirmatively allege – that they obtained a mortgage loan from Wilmington Finance, Inc. memorialized by a Deed of Trust recorded in the Montgomery County Recorder's Office, a copy of which is attached to the Complaint as Exhibit A and the validity of which is not challenged. (See Compl. ¶ 12.)

According to the terms of the Deed of Trust, "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower" which "might result in a change in the entity . . . that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law." (Ex. A to Compl. ¶ 20.)  In other words, the terms of the Deed of Trust, to which the Tobiases agreed by way of their signatures on the Deed of Trust, show that it can be assigned.  The terms of the Assignment reflect that is, indeed, what happened.  It reads, in relevant part, "For Value Received, the undersigned holder of a Deed of Trust . . . does hereby grant, sell, assign, transfer and convey unto NATIONSTAR MORTGAGE, LLC . . . all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust." (Ex. C to Compl.)  Although the Tobiases allege that the Subject Property's marketability and their ability to sell it are harmed (Compl. ¶ 41), these allegations are conclusory and unsupported by any other factual allegations.

Even if the Tobiases had sufficiently alleged an actual injury, they have not alleged conduct that is unfair or deceptive.  "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Dalton, 548 S.E.2d at 711.  As just explained, the terms of the Deed of Trust – the validity of which is not challenged – permit Wilmington Finance, Inc. to sell the Note and the

Deed of Trust. In turn, the Assignment – filed on September 3, 2013, in Montgomery County – acknowledges that the beneficial interest under the Deed of Trust was sold and assigned to Nationstar. Aside from the conclusory allegations that the Assignment is void <u>ab initio</u>, a claim the Tobiases have no standing to pursue, there are no factual allegations of unfair or deceptive conduct on the part of Defendants. <u>See</u> <u>Smallwood</u>, 2013 WL 4735877, at *4 (dismissing UDTPA claim where the plaintiff, challenging her mortgage, failed to plead any "outrageously immoral or oppressive" conduct by the defendants); <u>Joy v. MERSCORP, Inc.</u>, 935 F. Supp. 2d 848, 863-64 (E.D.N.C. (2013) (dismissing UDTPA claim because "allegations that loan documents and assignments in support of the third foreclosure were invalid, unauthorized or otherwise defective" were "not sufficient to establish the egregious or aggravation [sic] circumstances that must be alleged") (internal quotations omitted). Accordingly, the fourth claim alleging a violation of the UDTPA is dismissed.

III.

For the reasons explained herein, IT IS HEREBY ORDERED that Defendants' Partial Motion to Dismiss Complaint [Doc. #9] is GRANTED and that the third and fourth claims are DISMISSED.

This the 2nd day of January, 2018.

<u>/s/ N. Carlton Tilley, Jr.</u><br>
Senior United States District Judge